In the Matter of PAUL CRAMES, an Attorney, Respondent.

First Department, July 15, 1932.

*Charles B. Brophy* of counsel [*Einar Chrystie*, attorney], for the petitioner.

*I. Montefiore Levy*, for the respondent.

FINCH, P. J. The respondent was admitted to practice as an attorney and counselor at law in the State of New York on November 13, 1922, at a term of the Appellate Division, First Department.

By the petition herein he is charged with misconduct as an attorney at law as follows: Several years prior to March, 1928, one Mrs. Lillian Dieterman obtained a separation decree against her husband and an award for five dollars a week, permanent alimony. In March of 1928 she retained the respondent to collect alimony that had accrued during the preceding two years and which aggregated $565. The respondent collected the alimony and was paid his fee therefor. Thereafter, without the knowledge or consent of Mrs. Dieterman, the respondent on June 8, 1929, collected from her husband the further sum of $265 on account of alimony that had accrued subsequently, and converted the same to his own use. Thereafter, in March, 1930, Mrs. Dieterman, not knowing that respondent had made the aforesaid collection, called upon him and requested him to collect alimony subsequent to that which she had received in March, 1928. The respondent advised her that he would do so and concealed from her the collection of the $265 which he had made in June, 1929, and falsely represented to her that there was in March, 1930, $525 accrued alimony and that he would take appropriate proceedings to collect it for

a fee of $75. Thereafter on March 25, 1930, the respondent collected from Mr. Dieterman the further sum of $200, which the respondent without his client's knowledge or consent accepted in full satisfaction of all alimony due at the time, and converted the same to his own use.

The respondent thereafter on March 31, 1930, sent his client a letter containing false statements for the purpose of misleading his client into believing that the accrued alimony had not been collected. The following is a copy of the letter: "I waited for your telephone call today but had to go out on some matter. I saw Mr. Dieterman on Friday, March 28, 1930, and have made the following agreement with him: I am to see him this coming Saturday and obtain from him the sum of $250 on account of the sum due by him. He has faithfully promised that the balance will be paid within a period of three weeks thereof. By making this arrangement as aforesaid we are not losing any time and also will be saving you the sum of $25 as sheriff's fees. Mr. Dieterman discussed the matter very nicely and told me he will be in the position to absolutely make these payments on time. I hope this agreement is satisfactory to you and will now make a definite appointment for you to be at my office next Monday, April 7, 1930, after the close of your business day."

Thereafter, in the early part of April, 1930, at the request of the respondent, Mrs. Dieterman called at his office, when he represented to her that he had shortly prior thereto collected $250 from her husband, and gave her as her share thereof his postdated check for $212.37. Thereafter, on April 14, 1930, the respondent wrote Mrs. Dieterman a letter in which he falsely advised her that it had been necessary for him to redeposit Mr. Dieterman's check because of faulty signature and requested her to hold his check until the latter part of the week. The respondent's check, when deposited, was returned by the bank upon which it was drawn because of insufficient funds to the credit of the account of the respondent. This check, however, subsequently was made good by the respondent. Thereafter, on June 30, 1930, the respondent wrote Mrs. Dieterman a letter in which he falsely stated: "Due to Mr. Dieterman's illness I was unable to see him last week at the appointed time and another appointment was made with him for this coming Saturday."

Thereafter Mrs. Dieterman called upon the respondent on several occasions, when he falsely advised her that he had been unable to collect the balance due from her husband and finally advised her that he intended to make a motion to punish her husband for contempt, and the respondent thereafter sent her by letter of June 16, 1930, an affidavit which he represented was to be used

upon the motion. The letter of the respondent reads as follows: " I forgot to send this affidavit to you for signature. Please sign you name at the place indicated by a cross mark and return to me immediately."

The affidavit was entitled in the Supreme Court, New York county, and reads in part as follows: " Lillian Dieterman being duly sworn, deposes and says: She is the plaintiff in this action which was brought for a separation from the bed and board of the defendant. This judgment in the action was duly rendered in her favor on December 26, 1923, and that same was entered on that day in the office of the Clerk of the County of New York. That a copy of said judgment is hereto annexed and made a part of the moving papers and is marked plaintiff's exhibit 1. That among other things it was provided in said judgment that the defendant be required to pay the plaintiff the sum of $5 weekly as alimony for her support and maintenance from the date of the judgment during her full life, said sum to be paid each and every week into the hands of or upon the order of said plaintiff. Deponent states that for the period from March 19, 1930, there became due and owing to deponent alimony in the sum of $520 on account of which has been paid the sum of $250. Deponent by her attorney Paul Crames has demanded payment of this balance but same has been refused. Deponent honestly believes the defendant wilfully refuses to pay the balance due solely for the purpose of annoying and harassing your deponent herein, knowing that she is fully dependent on this money in order to live. Deponent respectfully states that sequestration proceedings in this matter will be ineffectual for the reason that the defendant has no tangible personal property within the State of New York which can be requisitioned by the order of this Court, and plaintiff further states that the defendant does not own any real estate from which he might derive any profits or income and that further payment cannot be enforced by resorting to the security given, if any, as prescribed by statute, and that the conduct of the defendant was such as to defeat, impair and prejudice the right or remedy of the plaintiff herein.

" An order to show cause is, therefore, asked for requiring defendant to show cause why he should not be punished for contempt of court for his failure to make payment of the alimony heretofore referred to and why deponent should not have such other and further relief as may seem just and proper in the premises. No previous application for the foregoing relief has heretofore been made."

Mrs. Dieterman, relying upon the information given her by the respondent, signed and returned this affidavit to the respondent,

as requested by him. Substantially all of the statements contained in the foregoing affidavit, beyond the facts which relate to the judgment, were of course known to the respondent to be untrue, and the respondent had no intention of making any motion with respect to the alimony falsely alleged in the affidavit to be unpaid.

Thereafter, on September 16, 1930, Mrs. Dieterman called upon the respondent. He falsely advised her that the motion had been granted and that he had succeeded in collecting the further sum of $270 from Mr. Dieterman through the sheriff. The respondent at the same time paid Mrs. Dieterman $219 and kept the balance for his fees and expenses, including an alleged sheriff's fee of thirteen dollars and fifty cents. Mrs. Dieterman thereafter learned from her husband the true facts and that respondent had not seen or communicated with him after the payment that Mr. Dieterman had made on or about March 25, 1930.

Upon obtaining this information Mrs. Dieterman called on respondent and demanded the return of the thirteen dollars and fifty cents which he had retained for alleged sheriff's fees, and the respondent returned the same to her.

It is charged that the respondent collected the sum of $265 from Mrs. Dieterman's husband without her knowledge and converted the same to his own use until April, 1930; that on March 25, 1930, he collected the further sum of $200 from Mr. Dieterman, converted the same to his own use and concealed said collection from his client until he finally paid her in September, 1930; that the letter of the respondent and the affidavit which he prepared as above stated were written by the respondent for the purpose of deceiving his client and to conceal from her the facts with relation to the collection of her alimony.

The respondent answered, and the matter was referred to an official referee to take testimony with respect to the charges and to report the same to the court, with his opinion thereon. The learned referee has duly reported, stating that he finds the charge absolutely sustained by the evidence. He further reports ·that, at the opening of the matter, counsel for the respondent stated: " The respondent recognizes and admits that he has done a great wrong and he feels that in honor to his profession as well as in an effort to fulfill his manhood he should admit it and in partial atonement for the wrong he did this lady he should admit it. * * · * There is nothing he can do but to manfully confess the full situation."

The respondent enlisted in the World War and received an honorable discharge.

The matter is now before this court upon the motion of the petitioner that the respondent be adjudged guilty of professional

misconduct as charged in the petition herein, and that the court take such action as it may deem just and proper.

The only mitigating circumstance is the frankness and straight-forwardness of the respondent in admitting his guilt, instead of attempting to escape through an avenue of excuses falsely concocted. In addition, there is service and honorable discharge in the World War.

The respondent urges that he was impelled by financial necessity, yet states he has a brother able to and who would have assisted him had he not been too proud to ask. The respondent, however, was not too proud to enmesh himself in falsehood and dishonesty, in total disregard of the ethics of his profession and the rights of his client and her husband. A flagrant instance of misdirected intelligence is here set forth.

Were it not for the mitigating circumstances, a punishment of disbarment would be appropriate.

In view, however, of the mitigating circumstances, it is the judgment of this court that the respondent be suspended for two years, with leave to apply for reinstatement at the expiration of that term upon proof of his compliance with the conditions incorporated in the order.

McAvoy, Martin, O'Malley and Townley, JJ., concur.

Respondent suspended for two years, with leave to apply for reinstatement at the expiration of that term upon proof of his compliance with the conditions incorporated in the order.